UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATALIE BRUSH,

        Plaintiff,

v.                          Case No. 8:14-cv-02163-CEH-EAJ

BAYSIDE ORTHOPAEDICS, INC., et al.,

        Defendants.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY

Plaintiff, NATALIE BRUSH, by and through her undersigned counsel, hereby opposes the Motion to Stay Proceedings Pending Transfer to MDL No. 2197 – In Re: DePuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation ("Motion to Stay"), filed by Defendants DEPUY ORTHOPAEDICS, INC., DEPUY INTERNATIONAL LIMITED, JOHNSON & JOHNSON, JOHNSON & JOHNSON SERVICES, INC. (collectively, "the Johnson & Johnson Defendants"), and BAYSIDE ORTHOPAEDICS, INC. ("Bayside").

## BACKGROUND

Plaintiff, NATALIE BRUSH, through counsel, filed this action in the Twelfth Judicial Circuit Court in and for Sarasota County, Florida, claiming damages for the failure of a recalled surgical hip replacement system manufactured by the Johnson & Johnson Defendants, and promoted, distributed, sold, and serviced by Defendant Bayside. Despite the fact that Bayside is a citizen of Florida, the Johnson & Johnson Defendants removed this case to this Court, asserting in their Notice of Removal that Bayside had been fraudulently joined as a defendant so as to obstruct diversity jurisdiction. Plaintiff thereafter filed a Motion for Remand to the Twelfth

1

Judicial Circuit Court in and for Sarasota County, Florida, demonstrating that joinder of the in-state Defendant, Bayside, was proper. Subsequently, Defendants filed the instant Motion to Stay, stating that they have notified the United States Judicial Panel on Multidistrict Litigation (the "Panel") of this action as related to Multi-District Litigation ("MDL") No. 2197, and asserting that this case will be listed on a Conditional Transfer Order issued by the Panel. In fact, Conditional Transfer Order No. 248 was entered on September 10, 2014, and will remain conditional, in accordance with the rules of the Panel, to give Plaintiff the right to object to the transfer and be heard by the Panel.

## INTRODUCTION

By virtue of filing their Motion to Stay, Defendants seek to prevent this Court from considering the threshold jurisdictional issue presented by Plaintiff's Motion for Remand. Plaintiff proposes, instead, that this Court should comply with its duty to ensure jurisdiction prior to deciding the Motion to Stay. Federal courts are courts of limited jurisdiction. No statute, rule, or policy of the Panel prevents this Court from considering remand of this case. In fact, the United States Supreme Court and numerous other courts have ruled that a federal district court must determine its jurisdiction as a threshold matter. Absent jurisdiction, it is axiomatic that a court has no power to act, even to enter a stay. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The question of a court's jurisdiction over a proceeding is a fundamental one, going to the court's very power to act. Federal courts have a "continuing duty to confirm their jurisdiction." *Maness v. Bayer Corp*. at *6; *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998); *see also Kokkonen* at 377.

Defendants contend that this Court should stay all proceedings pending transfer to MDL 2197. Defendants would have this Court believe that it is in the interests of fairness to the

parties, judicial economy, and conservation of judicial resources to stay this action at this juncture. Despite Defendants' misplaced arguments, such concerns do not mandate the entry of a stay. On the contrary, they disfavor it. First, and foremost, this Federal District Court has consistently held that it does not have jurisdiction over identical claims brought by plaintiffs against in-state distributors of metal on metal hip implants. *See Barnes v. Bayside Orthopaedics, Inc.*, Case No. 8:11-dv-2827-T-30EAJ (M.D. Fla. Jan. 19, 2012) and *Zaremba v. Orthopedics, Inc., et al*, Case No. 8:14-cv-1016-T-33TGW (Doc. No. 8, May 2, 2014), both infra. A stay at this juncture would cause this case to be transferred to an MDL in another jurisdiction. In light of the clarity of the outcome of the underlying jurisdictional issues, staying the case would subject Plaintiff to an unconstitutional delay simply to have a different tribunal reach the same jurisdictional conclusion. What's more, because the Middle District already ruled against Defendants, Defendants' only goal in moving to stay this case is to seek a decision by the MDL court that would go against the previous rulings of the Middle District. Thus, despite their misplaced claims that a ruling on the remand would risk inconsistent rulings, Defendants' motion to stay actually seeks inconsistent rulings.

Courts around the country have found that the principles of judicial economy and expediency are better served by a determination of jurisdiction rather than the entry of a stay. Further, the jurisdictional issues pending before this Court have consistently been decided in Plaintiff's favor. Therefore, entering a stay would subject Plaintiff to an unconstitutional delay to indefinitely wait for another jurisdiction to come to the same conclusion. Further, the risk exists that the other jurisdiction may rule inconsistently with this Court. As a result, not only would Plaintiff be unconstitutionally prejudiced by an entry of a stay, a stay would be highly inefficient for the courts. In fulfilling its Constitutional duty to determine jurisdiction as a

threshold matter, this Court will better promote the interests of judicial economy and expediency. Thus, this Court is both empowered and required to deny the Defendants' Motion to Stay, and consider Plaintiff's Motion for Remand.

At bottom, Defendants merely seek to avoid answering to this Court on their assertion of fraudulent joinder, and wish to delay to another day and a more distant tribunal their heavy burden of demonstrating diversity jurisdiction with the presence of a Florida defendant. Such an attempt to subject Plaintiff to an unconstitutional delay should not be countenanced by this Court.

## ARGUMENT

### I. This Court Has Authority to Consider Plaintiff's Motion for Remand Pending Transfer of this Action to MDL No. 2197

The mere pendency of a transfer motion before the Panel does not in any way limit the jurisdiction of the transferor court to rule upon matters properly presented to it for decision. *See General Elec. Co. v. Byrn*, 611 F.2d 670 (7th Cir. 1997); *see also Accord Waters v. Bausch & Lomb, Inc., et al,* Final Order Granting Motion for Remand; Denying Motion for Attorney's Fees; Denying Motion to Stay at 3, Case No. 06/80547-CIV DIMITROULEAS (S.D. Fla. July 26, 2006), (*see* **Exhibit 1**); *see also Wade v. Bausch & Lomb, Inc., et al., see* **Exhibit 2**; *see also Barnes v. Bayside Orthopaedics*, Case No. 8:11-cv-2827-T-30EAJ, Doc. No. 11 (M.D. Fla. Jan. 5, 2012) (denying stay requested by these same Defendants); *see also Zaremba v. Orthopedics, Inc., et al.*, *see* **Exhibit 3** (remanding a case involving allegations of fraudulent joinder despite pending motion to stay). This is consistent with Rule 2.1(d) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, which states:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and

4

pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court.

Similarly, the Manual for Complex Litigation, Fourth, § 20-131 (2004) states:

> The transferor court should not automatically stay discovery . . . Nor should the court automatically postpone rulings on pending motions, or generally suspend further proceedings.

Thus, this Court may rule on a pending Motion for Remand despite the issuance of a conditional transfer order. *See e.g., Barnes v. Bayside Orthopaedics*, *see* **Exhibit 4** (denying stay and granting remand after entry of conditional transfer order in suit involving DePuy ASR hip); *see also Kopitke v. DePuy Orthopaedics, Inc. et al.*, 2011 WL 856865 (N.D. Ill. Mar. 8, 2011) (same).

The Panel recently emphasized that a district court may rule on motions to remand prior to the transfer of an action to MDL 2197, stating:

> Panel Rule 2.1(d) expressly provides that the pendency of a conditional transfer order does not in any way limit the pretrial jurisdiction of the court in which the subject action is pending. **Between the date a remand motion is filed and the date that transfer of the action to the MDL is finalized, a court wishing to rule upon that motion (or any other motion) generally has adequate time in which to do so.**

*In Re: DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation*, MDL No. 2197, Transfer Order, n. 1 (J.P.M.L. April 18, 2011) (emphasis added).

The foregoing Rule and ruling make clear that the Panel does not encourage courts to defer ruling on motions to remand pending transfer to an MDL, nor is it the stated or expressed preference of the Panel that district courts avoid ruling on motions to remand. Indeed, the Panel has historically encouraged district courts to rule on motions for remand prior to transfer. *See Hobbs v. Wyeth,* 2004 WL 6005569 at *2 (E.D. Ark. 2004) (citing letter from Panel Chairman stating, "[t]hus your jurisdiction continues until any transfer becomes effective. If you have a

motion pending before you in the action — **particularly a motion to remand to state court** (if the action was removed to your court) — you are **encouraged** to rule on the motion unless you conclude that the motion raises issues likely to arise in other actions in the transferee court...") (emphasis added); *see also Shields v. Bridgestone/Firestone, Inc.*, 232 F.Supp.2d 715, n. 1 (E. D. Tex., 2002) (quoting identical language from a different MDL); *see also Tennessee Consolidated Retirement System v. Citigroup, Inc.*, 2003 WL 22190841 at *1 (M.D. Tenn. May 9, 2003) (quoting similar language).

## II. Subject Matter Jurisdiction Is a Threshold Issue That This Court Should Decide Prior To a Motion to Stay

Plaintiff filed this action in state court setting forth state law claims against Defendants, including the in-state Defendant, Bayside. The Johnson & Johnson Defendants removed the case to this Court by asserting the fraudulent joinder of Bayside, and Plaintiff has sought remand because Bayside's joinder was proper and because there is no diversity of citizenship. Thus, the issue of subject matter jurisdiction is squarely before this Court.

The United States Supreme Court has declared the requirement that jurisdiction be established as a threshold matter. *See Steel Co.* at 94-5 (finding that this requirement "springs from the nature and limits of the judicial power of the United States and is '*inflexible and without exception*.'") (emphasis added). Accordingly, it is axiomatic that a federal court should give priority to jurisdictional issues. *See Gupta v. Holder*, 2011 U.S. Dist. LEXIS 109162 at *4 (M.D. Fla. Sept. 26, 2012) (subject matter jurisdiction takes priority); *see also Select Portfolio Servicing, Inc. v. Evaluation Solutions, L.L.C.*, 2006 U.S. Dist. LEXIS 67271 at *4 (M.D. Fla. Sept. 20, 2006) ("[T]he Court must first address this jurisdictional issue.").

### a. The Middle District Is Clear: The Jurisdictional Issue Is Not In Question and A Remand Is Required, Not a Stay

In a nearly identical case posture with nearly identical facts, this very Court denied a motion to stay (by the very same defendants as in the instant matter) as moot in favor of addressing the jurisdictional issues raised by the plaintiff's motion for remand. *Barnes v. Bayside Orthopaedics, Inc.*, *see* **Exhibit 4**. In granting the plaintiff's motion for remand, this Court found that Bayside, who was also the distributor defendant in that case, was not fraudulently joined. *Id.* at *5. Importantly, *Barnes* involved the same defective hip replacement, the DePuy ASR, manufactured and sold by the same Johnson & Johnson Defendants, and the same distributor, Bayside. Given this identical scenario, Plaintiff respectfully submits that the same outcome should issue here and that Plaintiff's Motion for Remand should be ruled upon (and in favor of Plaintiff) before this Court rules on Defendants' Motion to Stay.

In another similar case involving a defective hip replacement manufactured by one of Defendants' competitors, the Honorable Virginia M. Hernandez Covington of this Court *sua sponte* raised the issue of subject matter jurisdiction after the manufacturing defendants removed the plaintiff's case from state court, alleging (just like here) fraudulent joinder of the non-diverse distributor defendant. *Zaremba v. Orthopedics, Inc., et al*, Case No. 8:14-cv-1016-T-33TGW (Doc. No. 8, May 2, 2014), *see* **Exhibit 3**. In her Order directing the parties to brief the Court on the existence or non-existence of federal subject matter jurisdiction, Judge Hernandez Covington noted that,

> [B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, **a court must zealously insure that jurisdiction exists over a case**, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.

*Id. quoting Smith v. GTE Corp.*, 236 F. 3d 1292, 1299 (11th Cir. 2001) (emphasis added).

Subsequently, the defendants in *Zaremba* filed a motion to stay all proceedings pending transfer

of the matter to an MDL. The defendants argued there (just like here) that the Middle District should forego ruling on remand in favor of a stay.

Despite that motion to stay, and after being briefed by the parties on subject matter jurisdiction, Judge Hernandez Covington remanded the matter to Florida state court. In her order, Judge Hernandez Covington clearly ruled that the defendants' preemption argument must fail for two reasons. First, the defendants there alleged causes of action not based upon a failure to warn, which was the basis of the defendants' preemption argument. As a result, those causes of action would necessarily survive the preemption argument:

> Therefore, because Zaremba has made a possible, colorable claim under Florida law, independent of a duty to warn, *Mensing* does not preclude Zaremba from bringing Counts one through four against the Distributor Defendants and Counts one through six against the Biomet Defendants in State Court.

**Exhibit 3**, at 8-9. Similarly, Plaintiff here has alleged only two of six counts which are based on a failure to warn and Defendants' preemption arguments are based solely on *Mensing*. Therefore, just as in *Zaremba*, because Defendants' preemption argument only reaches two of Plaintiff's six causes of action, Plaintiff brings at least four causes of action that must belong in state court.

In addition to Defendants' logical failure to apply their preemption argument to the entirety of Plaintiff's complaint, Defendants' preemption argument must also fail because Judge Hernandez Covington also ruled that the *Mensing*-based preemption argument itself is unavailing:

> Furthermore, the Biomet Defendants have not shown that imposing an independent duty to warn upon device distributors under state law conflicts with federal law under *Mensing*. 21 U.S.C. §§ 331(b) and 352 (a)-(c). There is a marked difference between a duty requiring a drug manufacturer to physically change its federally approved label and a duty requiring a distributor to warn a third party of what the federally approved

label or warning on file with the FDA says. **Accordingly, whether Florida law imposes a duty to warn upon device distributors such as the Distributor Defendants is a determination best left to State Court.**

*Id.* at fn. 2 (emphasis added). After *Barnes* and especially *Zaremba*, the door is shut on Defendants' *Mensing*-based fraudulent joinder attempt. Accordingly, the jurisdictional issue pending and fully briefed before this Court is not in question, whatsoever. The Middle District makes clear that this stay should not be entered and a remand ordered, instead.

### b. Other Districts Also Require An Outcome In Plaintiff's Favor

Likewise, in *Lloyd v. Cabell Huntington Hospital, Inc*., the plaintiff filed suit in state court claiming she had been injured by a defective orthopedic medical product. *Lloyd v. Cabell Huntington Hospital, Inc*., 58 F. Supp. 2d 694, 696 (S.D. W. Va. 1999). After removal, the district court granted the plaintiff's motion to remand and denied the motion to stay pending transfer to the MDL, finding:

> This Court cannot, however, stay proceedings in an action over which it lacks jurisdiction…If federal jurisdiction is doubtful, remand is necessary.

*Id*.

Similarly, in *Pennsylvania v. TAP Pharmaceutical Products, Inc*., suit was brought in state court and removed to federal court. *Pennsylvania v. TAP Pharmaceutical Products, Inc*., 415 F. Supp. 2d 516, 518-19 (E.D. Penn. 2005). Defendants moved to stay the proceedings to transfer the matter to an MDL while the State of Pennsylvania moved for remand. *Id*. The State argued that the district court in Pennsylvania <u>must</u> decide the threshold issue of jurisdiction before deciding the motion to stay. *Id*. at 520-21. The court agreed with the State and concluded "**the power to grant a stay is subject to an important limitation: the existence of subject matter jurisdiction**." *Id*. at 521 (emphasis added). The court explained that "to adjudicate any pretrial matters, it must satisfy itself that it has the power to do so." *Id*. The court held:

> Therefore, granting a stay solely based on the existence of a factually-related MDL proceeding, without undertaking an individualized analysis of subject matter jurisdiction, would run counter to established case law, congressional intent, and JPML Rule [2.1], all of which contemplate a district court will act to resolve threshold jurisdictional concerns.

*Id.*

In *Stern v. Mutual Life Ins. Co. of New York*, the Northern District of Alabama denied a similar request for stay, holding:

> **If the court lacks jurisdiction over the action *ab initio*, it is without jurisdiction to enter such a stay.** It is incumbent upon a court whose subject matter jurisdiction is questioned to make a determination as to whether it has, or does not have, jurisdiction over the action. This determination involves no issues that the putative transferee court in the multi-district action would be uniquely qualified to address. Therefore, defendants' request for a stay of proceedings should be denied.

968 F. Supp. 637, 639 (N.D. Ala. 1997) (emphasis added).

Like the district courts in the foregoing cases, this Court has a fundamental duty to determine its subject matter jurisdiction before it considers the Motion to Stay. If this Court determines it has no subject matter jurisdiction, it will concurrently lack authority to adjudicate the Motion to Stay. For these reasons, which form the very basis of our system of federal jurisprudence, this Court should rule on Plaintiff's Motion for Remand prior to considering Defendants' Motion to Stay.

### c. This Court Has, Largely, Only Stayed Actions Involving These Defendants Where the Defendants' Motions to Stay Were Unopposed and Where There Were No Pending Motions for Remand

In support of their Motion to Stay, Defendants cite a lengthy list of twenty-three cases involving the DePuy ASR hip implant to show that this Court has frequently entered stays of proceedings pending transfer to the MDL. *See* Doc. No. 5, Defs. Mot. to Stay, p. 2. Defendants characterize three of these motions to stay as having been opposed by the plaintiffs. *Id. citing*

*Stratos v. Bayside Orthopaedics, Inc., et al.,* No. 8:12-cv-02137-SCB-TBM (M.D. Fla. Jan. 9, 2013), *Hammers v. Bayside Orthopaedics, Inc., et al.*, No. 8:12-cv-2553-T-35-MAP (M.D. Fla. Dec. 4, 2012), and *Speed v. DePuy Orthopaedics, Inc.*, No. 6:11-cv-01682-MSS-GJK, endorsed order (M.D. Fla. Oct. 26, 2011). However, the *Speed* docket (**Exhibit 6**) does not indicate that the motion to stay was actually opposed. *See* **Exhibit 5**. Further, the stay in *Stratos* was entered only after the plaintiff filed a notice informing the court she did not oppose the entry of a stay. *See* **Exhibit 6** "Plaintiff's Notice On Defendants' Motion to Stay". Thus, that leaves only the *Hammers* case, discussed below, where a stay was entered despite an opposition. The other twenty cases cited by Defendants involved cases where the defendants' motions to stay were unopposed.

Further, Defendants fail to mention whether any of the cases cited in their entire motion involved pending motions for remand. A review of each of the dockets of the twenty-three Middle District cases cited by Defendants reveals that only *Hammers* had a pending motion for remand. *See Hammers v. Bayside Orthopaedics, Inc., et al.*, No. 8:12-cv-2553-T-35-MAP (M.D. Fla. Dec. 4, 2012). Plaintiffs in the other cited Middle District cases had not filed motions for remand nor opposed the motions to stay. Thus, the only two cases in which this Court has been faced with competing motions to remand and to stay involving the DePuy ASR hip implant are *Hammers v. Bayside Orthopaedics, Inc., et al.*, and *Barnes v. Bayside Orthopaedics, Inc.*, in which this very Court denied the requested stay and remanded the action to state court. Importantly, it was the *Barnes* decision this court followed recently in *Zaremba*. *See* **Exhibit 3.**

> **d. The Defendants' Motion Mischaracterizes The Espoused Stay as Being "Short"**

Defendants grossly mischaracterize their espoused stay as being "short."[1]  Indeed

Defendants regularly make this exact same claim when they move to stay such cases.  *See e.g.:*

*Barnes v. Bayside Orthopaedics, Inc., et. al.*, Case No. 8:11-dv-2827-T-30EAJ, Doc. No. 7, pp.

6-7;  *Hammers v. Bayside Orthopaedics, Inc., et al.*, No. 8:12-cv-2553-T-35-MAP, Doc. No. 4,

pp. 7, 11; *McConnell v. DeBiase, Inc. et. al.,* Case No. 1:11-cv-22025-AJ, Doc. No. 4, pp. 4-5.

In actuality, such stays are indefinite and can last over a year and sometimes well over two years.

Indeed, *McConnell v. DeBiase, Inc. et. al.*, involving the same product and removing defendants

here, languished in the MDL for well over two years without ever having the jurisdictional issues

addressed by the MDL.

The plaintiff in *McConnell* quickly moved to have the MDL reconsider the remand

originally filed in the Southern District of Florida.  In a boldly double-faced move, Defendants,

after espousing to the local District Court in *McConnell* that the stay they moved for would be

"short," advocated to Judge Katz in the MDL as follows:

> …[I]t is "comfortably within the bounds of its discretion," and even
> advisable for district courts "to defer consideration of . . . jurisdictional
> challenges":
>> A district judge managing such a complex situation
>> reasonably may conclude that the court's time, especially
>> early in the litigation, is better spent on activities other than
>> deciding hundreds of individual remand motions. It often
>> would be appropriate to conclude that many of the cases in
>> which such motions are filed are likely to settle and that the
>> expenditure of judicial resources on remand motions likely
>> would be wasted. Moreover, even if an MDL or
>> comparable court dealt immediately with remand motions
>> pending at a given moment, new cases and new remand
>> motions are likely to be filed throughout the pendency of
>> the litigation. Deciding each motion prior to addressing
>> other issues common to all or most cases therefore could
>> require a significant expenditure of judicial time and

---

[1] "A short stay will ensure that this action proceeds in an orderly, coordinated fashion under the direction of Judge Katz."  Defendants' Motion To Stay, Doc. No. 5, pp. 6-7, 12.

> resources, derailing the progress of the litigation as a whole.
>
> **The delays associated with deciding motions for remand early "could well frustrate the purpose of MDLs**, which is 'to promote just and efficient conduct' of actions involving common questions of fact."

*McConnell v. DeBiase, Inc. et. al.*, Case No. 1:11-dp-22200-DAK, Doc. No. 21, p. 4 (original emphasis and internal citations removed, emphasis added.). Similarly, *Hammers* languished in the MDL for over a year without ever having the jurisdictional issues addressed by the MDL.

What is clear based on Defendants' history of moving to stay these cases is that they have no desire to have such stays be "short." They prefer, as advocated to Judge Katz, to have these cases sit idly and languish in the MDL despite the fact that these cases rightfully belong in state court. Defendants seek to benefit from the unconstitutional delay triggered by their removal. Again, such maneuvers should not be countenanced by this Court.

### e. Plaintiff's Case Is Not Eligible For Defendants' US ASR Settlement Program and Will Languish Indefinitely In the MDL

On November 19, 2013, a Master Settlement Agreement ("MSA") was entered into in the MDL. This MSA has certain qualifications in order for a recipient of Plaintiff's hip implant to take part in the settlement program. Plaintiff does not qualify. So, while plaintiffs like those in the *Hammers* and *McConnell* cases, cited above, eventually became eligible for a settlement after languishing without having their remand motions heard, Plaintiff here has no such hope.

The MDL currently has no plan to provide Plaintiff with an opportunity to settle. The goals of the MDL at this time have moved away from discovery and pretrial rulings, and the MDL is now fully involved in the administration of the ASR settlement program. Thus, transfer of this case to MDL 2197 will result in Plaintiff being in limbo, waiting indefinitely for the settlement to play out before any attention could conceivably be paid to Plaintiff's case. Therefore, the entry of a stay in Plaintiff's case here will subject Plaintiff to the risk of the same

outcome as that in *Hammers* and *McConnell*: a wait of possibly years before Plaintiff's case is addressed. At bottom, Defendants seek to benefit from the unconstitutional delay triggered by their removal.

### III. The Johnson & Johnson Defendants Have Previously Been Sanctioned Due To Their Repeated Efforts To Remove Valid State Court Cases to a Federal MDL Court

The Johnson & Johnson Defendants removed this matter to federal court, despite the presence of a valid in-state Defendant, Bayside. Now, after Plaintiff has filed his Motion for Remand to Florida state court, Defendants hope to postpone Plaintiff's case even further by filing this Motion to Stay. This delay tactic is similar to that of Johnson & Johnson in *Wilson v. Ethicon Women's Health and Urology, et al.*, Civ. Action No. 2:14-cv-13542 (S.D. W.Va. May 13, 2014), Order attached as **Exhibit 7**. *Wilson* dealt with allegedly defective transvaginal surgical mesh manufactured and sold by Johnson & Johnson, and was one of over 18,000 cases organized in an MDL before District Court Judge Joseph R. Goodwin of the U.S. District Court for the Southern District of West Virginia. Like in the instant litigation, Johnson & Johnson had made it a habit of removing cases to federal court, despite there being a non-diverse defendant named in the complaint. *Id.*

In *Wilson*, Judge Goodwin initially found that Johnson & Johnson's attempts at removal were improper, holding that claims against the in-state defendants were valid. The defendants continued to remove cases, simply shifting their arguments. Unmoved, Judge Goodwin granted sanctions against the Johnson & Johnson's law firm, Drinker Biddle & Reath LLP,[2] in an amount equal to the plaintiff's just costs and attorneys' fees incurred in handling the motion to remand. *Id.* at *8. Judge Goodwin explained that,

---

[2] Notably, the removing Johnson & Johnson defendants in *Wilson* were represented by the same law firm that represents the Johnson & Johnson Defendants here, in MDL 2197.

In this case, I do not believe that defense counsel's actions were motivated by ignorance of the law. These are competent attorneys who knew or should have known when the notice of removal was filed that their arguments were objectively unreasonable and had no chance of success. **Defense counsel's motives here seem to be calculated to keep these cases out of state court for as long as possible and to waste the court's time and the plaintiff's resources**.

*Id.* (emphasis added).

Likewise, here, the Johnson & Johnson Defendants' have removed a case which was properly filed in state court, alleging fraudulent joinder. The very argument used to support their fraudulent joinder claim, federal preemption, has been **clearly decided in Plaintiff's favor in** *Zaremba v. Orthopedics, Inc., et al*. *See* **Exhibit 3**. Further, Defendants now seek a stay pending transfer to MDL 2197, despite the jurisdictional issues raised by Plaintiff's Motion for Remand and this District's clear position that removal is not proper in such circumstances. Like in *Wilson*, Defendants attempt here is a delay tactic that should not be countenanced by this Court.

### IV. Plaintiff Would be Prejudiced by the Entry of a Stay in This Action

It is clear that Plaintiff will suffer hardship as a result of a stay being granted. Should this Court enter a stay of this matter, Plaintiff will lose a most valuable commodity – time. In the event of a stay, it will be several months before this matter is transferred to the MDL. During these months, if a stay is entered, Plaintiff will not be able to have this Court address the jurisdictional issues raised by Plaintiff's Motion for Remand. Nor will Plaintiff be able to pursue his claim. A stay will have the additional effect of ensuring that Plaintiff's action is transferred to MDL 2197. Transfer to MDL 2197 will result in further delay, because the MDL is currently engaged in the administration of the ASR settlement program, for which Plaintiff is not eligible. Cases involving plaintiffs, like Plaintiff, who have not yet been revised or who were revised after the cut-off date set, and who are ineligible for the settlement, are not a priority of the MDL at this time. As a result, Plaintiff will lose additional time. Under the Case Management Orders of

the MDL, Plaintiff will be required to replead and rebrief his Motion for Remand. The back and forth rebriefing by the parties will take months. Such briefing will require Plaintiff to reargue the Motion under Sixth Circuit law and respond to new arguments raised by the Defendants. Once the Motion is completely re-briefed and ready for decision, more time will likely elapse as the MDL Court is largely focused on the administration of the settlement program and not on hearing motions to remand.

This lost time has a value to Plaintiff. During the time this case is stayed, and as a direct result of such stay, Plaintiff will be unable to prosecute his state law claims in state court. Plaintiff will be unable to engage in discovery regarding his claims, especially with respect to the in-state Defendant, Bayside. Even if Plaintiff's action is transferred to the MDL pending consideration of the jurisdictional issues, while he may participate in the MDL discovery, there will be no discovery involving his individual case. The MDL has conducted discovery into the manufacturer, but is now focused on the administration of the ASR settlement program, which Plaintiff is not eligible to participate in. Plaintiff would not be able to develop a case against Bayside in the MDL nor would the parties engage in any discovery concerning the Plaintiff's damages. The delay in this discovery has a cost to Plaintiff. As time passes, witnesses forget and evidence is lost. It is for this reason that courts cite to the axiom: justice delayed is justice denied.[3]

---

[3] *See U.S. Fidelity & Guaranty Co. v. Helm*, 84 F.2d 546, 547 (9th Cir. 1936) ("It is entirely proper that rules of court should be strictly enforced against such delays. In that period the opposing party's witnesses may disperse, real evidence may be lost, and the memories of the witnesses produced certain to fade in the accuracy of their recollection. These are among the principle reasons for the axiom, 'Justice delayed is justice denied.'"); *see also U.S. v. Swissco Properties* within S. Dist., 821 F. Supp. 1472, 1475 (S.D. Fla. 1993) (denying in part a motion to stay and concluding, "justice delayed is justice denied").

Plaintiff will also lose the opportunity to have his case go to trial in the same timely fashion as it would were this Court to deny the Motion for Stay and consider Plaintiff's Motion for Remand. Ultimately, the cost of time to Plaintiff is great. It is the lost months and years before he can litigate this matter to a point of resolution – to a point where he can rebuild his life. As a stay will delay the resolution of Plaintiff's jurisdictional concerns for a lengthy time and prevent Plaintiff from moving forward with his lawsuit, there can be no doubt that the entry of a stay will prejudice Plaintiff.

### V. Defendants Will Not Suffer Hardship as a Result of The Denial Of Their Motion to Stay

Defendants will not suffer inequity or hardship if their Motion to Stay is denied. Defendants argue that they "will suffer a hardship in the absence of a stay," because they will "be forced to respond to separate discovery requests, both in this action and in the MDL." *See* Defendants' Motion to Stay, Doc. No. 5, p. 12. Defendants further argue that a denial of their Motion to Stay "would lead to the very duplication of work that the MDL seeks to avoid," and that in the absence of a stay, "Defendants could face conflicting decisions on similar pretrial issues." *Id.*

Here, though, the potential of hardship to Defendants resulting from a denial of the requested stay is minimal. With respect to the potential for duplicative discovery, Plaintiff would first point out that Plaintiff has objected to a stay because this Court lacks subject matter jurisdiction to preside over this action. After this Court hears and rules on Plaintiff's Motion for Remand, Plaintiff suggests that the case will be remanded to state court and the issue of the Defendants' burden of responding to discovery in this Court will be moot. Moreover, as is clear from this Memorandum in Opposition, Plaintiff's primary concern with respect to the requested stay is that it not be employed to prevent this Court's consideration of Plaintiff's Motion for

Remand. Plaintiff does not object to a stay of discovery pending remand or transfer. Thus, Defendants will not suffer hardship as a result of a denial of the stay.

With respect to inconsistent pretrial decisions, Defendants' strategy actually seeks inconsistent rulings. As made clear supra, the jurisdictional issues have already clearly been decided in Plaintiff's favor in Federal Courts.[4] At bottom, Defendants strategy delays this case. However, at best, Defendants seek to have the MDL rule that Plaintiff fraudulently joined the in-state defendant. Such a ruling would be inconsistent with the previous jurisdictional rulings made by the Middle District and courts around the country. **Accordingly, it is with the goal of seeking an inconsistent ruling that Defendants file this Motion, not in any attempt to avoid one.**

Plaintiff's Motion for Remand turns on issues of Florida state law, despite Defendants' claims that "the issue of law at the heart of DePuy's removal – whether the state-law claims against the non-diverse Defendants are preempted – is an issue of federal law." *See* Defendants' Motion to Stay, Doc. No. 5, p. 7. As was pointed out by Judge Hernandez Covington of this District, "whether Florida law imposes a duty to warn upon device distributors such as the Distributor Defendants is a determination best left to State Court." *Zaremba*, **Exhibit 3** at pg. 9, fn 2.

### VI. Staying This Matter Pending Transfer to MDL 2197 Does Not Conserve Federal Judicial Resources

The final factor to be weighed is whether federal judicial resources will be conserved by the entry of a stay pending transfer to MDL 2197 in this matter. District Courts have determined that judicial economy is not served by staying cases which require individualized analysis of state law issues. Further, judicial resources would clearly not be conserved if this Court allows a

---

[4] See pp. 6-11, supra.

fully briefed issue of remand to be decided by an unfamiliar MDL judge, especially where precedent already directs a very clear outcome for the jurisdictional issues at play.

In *Vassilatos v. Del Monte Fresh Produce Co.*, Case No. 04-80450-CIV, 2004 U.S. Dist. Lexis 22123 at *8 (S.D. Fla. July 23, 2004), the District Court found that it was not in the best interest of judicial economy to stay proceedings pending transfer to an MDL. The Court explained that this was because the Court was readily familiar with Florida law and the remand motion had already been briefed in full. *Vassilatos* at n.6. Additionally, the Court stated that it is "always in the best interest of judicial economy to decide issues of jurisdiction as early as possible to conserve scarce judicial resources." *Id.* s*ee also Wade v. Bausch & Lomb, Inc., See Exhibit 2,* ("an MDL Court would not be better positioned to decide the Motion to Remand in this case"), *see also Copeland v. Eli Lilly & Co.,* 2005 WL 3533394 at *2 (W.D. Mo. 2005) (holding that resolution of the fraudulent joinder issue "would actually promote judicial economy in the MDL" because the MDL court would not have to examine the "myriad jurisdictional issues involving Missouri state law"); *see also Hobbs v. Wyeth, Inc.*, 2004 WL 6005569 at *2 (E.D. Ark. July 13, 2004) ("[t]he Court concludes that judicial economy and the objectives of the MDL will be furthered by this Court's consideration of the pending Motion for Remand, which involves fraudulent joinder issues turning entirely on questions of [state] law."); *see also Dantzler v. American Home Products Corp.*, 2000 WL 34333156, *2 (N.D. Miss. Sept. 13, 2000) ("In this matter, where the pivotal remand issue involves the application of Mississippi law, the undersigned is of the opinion that the remand motion is more appropriately decided in this forum."); *see also Kohl v. American Home Products Corp.*, 78 F.Supp.2d 885, 888 (W.D. Ark. 1999) ("best course" was to decide motion to remand because judicial "economy will be

best served by addressing remand issue [which] will facilitate litigation in the appropriate forum" and "turn on interpretation of state law.") (internal citations omitted).

In the instant matter, an individualized evaluation is necessary to determine the jurisdictional issues raised in Plaintiff's Motion for Remand. Therefore, no advantages of uniformity or conservation of judicial resources would be achieved by entering a stay. Rather, with respect to jurisdictional issues, "the same degree of judicial resources must be expended" here or in the Northern District of Ohio "to make an assessment of which party should prevail." *Pennsylvania v. TAP Pharmaceutical Products, Inc.*, 415 F. Supp. 2d 516, 521 (E.D. Penn. 2005) ("Therefore, the existence of subject matter jurisdiction cannot be resolved more efficiently or uniformly in MDL 1456 because it is undisputed that one federal court must make an individualized assessment of the jurisdictional issues in this case."). Thus, there would be no savings of judicial effort by abdicating the present question of jurisdiction to the Northern District of Ohio.

As the U.S. District Court for the Eastern District of Wisconsin stated when faced with similar arguments for stay in a similar DePuy ASR case:

> As an alternative to denying the Plaintiff's Motion to Remand, the Defendants request that the court withhold resolution and instead conditionally transfer this matter to the MDL court to permit this issue to be considered by that judge. (Docket No. 19 at 2-3) Despite the fact that the defendants indicate that other courts have followed this approach when dealing with similar issues, (Docket No. 19 at 2-3), this court declines to do so.
>
> Although raising the issue of fraudulent joinder might be common in similar actions related to this allegedly defective artificial hip, the resolution of the pending motion for remand depends distinctly upon an interpretation of Wisconsin law. A district court in Wisconsin is generally better equipped to address questions of Wisconsin law than a court in Ohio and as such, the court concludes that conditionally transferring this case to the MDL court would likely result in an unnecessary delay of the plaintiffs' case without leading to a more efficient resolution of the pending motion. One way or another, a federal court is going to have to consider Wisconsin

law and decide how it applies to the plaintiffs' case; in the view of this court, it makes the most sense for that burden to be borne by this court rather than kicking the can down the road.

*Malkmus, et vir. v. DePuy Orthopaedics, Inc., et al*, Case No. 11-C-365, Order Granting Plaintiffs' Motion to Remand at 3, 2011 WL 2436172, (E.D. Wis. 2011); s*ee also, Rundle, et al. v. DePuy Orthopaedics, Inc.,* Case No. 2:11-cv-00634-PMP-GWF, 2011 WL 3022569 at *5 (D. Nev. July 6, 2011) ("Although decisions from other jurisdictions demonstrate that the fraudulent joinder issue in this case is not unique to Nevada, resolution of the issue depends on the court's interpretation of Nevada law which a district court in Nevada is generally better equipped to address than the MDL court in Ohio.  Accordingly, the Court denies Removing Defendants' motion to stay.").

This Court is far more familiar with the nuances of Florida law than the MDL court. Moreover, this very Court has previously denied a request for stay and decided a remand motion, involving these same Defendants, in the plaintiff's favor. *See Barnes*, **Exhibit 4.**  Additionally, this District recently remanded a similar case involving identical allegations of fraudulent joinder, despite a pending motion to stay.  *See Zaremba*, **Exhibit 3**.  Accordingly, federal judicial resources would best be conserved by this Court's determination of the jurisdictional questions raised in Plaintiff's Motion for Remand.  Thus, considerations of judicial economy weigh in favor of this Court's denial of Defendants' Motion to Stay.

## CONCLUSION

As clearly supported by recent decisions of this very Court, Plaintiff has a reasonable probability of maintaining a cause of action for strict liability under Florida law against Bayside, and the joinder of Bayside was not fraudulent.  Accordingly, this Court should first take up the fundamental issue of subject matter jurisdiction raised in Plaintiff's Motion for Remand before

deciding Defendants' Motion to Stay. For the reasons set forth herein, if this Court determines it

has the authority to consider the latter Motion, it should be denied.

Dated this 11th day of September, 2014.

_/s/ Ilyas Sayeg_ _____

**Ilyas Sayeg, Esquire**
Florida Bar No. 99140
**Altom M. Maglio, Esquire**
Florida Bar No. 88005
**MAGLIO CHRISTOPHER & TOALE, P.A.**
1605 Main Street, Suite 710
Sarasota, FL 34236
Phone 888-952-5242
Fax 877-952-5042
Primary Email (1): isayeg@mctlawyers.com
Primary Email (2): amm@mctlawyers.com
Secondary Email (1): kelly@mctlawyers.com
Secondary Email (2): melissa@mctlawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by Notice of

Electronic filing generated by CM/ECF on September 11th, 2014, on all counsel of record.

_/s/ Ilyas Sayeg_ _____

**Ilyas Sayeg, Esquire**
Florida Bar No. 99140
**Altom M. Maglio, Esquire**
Florida Bar No. 88005
**MAGLIO CHRISTOPHER & TOALE, P.A.**
1605 Main Street, Suite 710
Sarasota, FL 34236
Phone 888-952-5242
Fax 877-952-5042
Primary Email (1): isayeg@mctlawyers.com
Primary Email (2): amm@mctlawyers.com
Secondary Email (1): kelly@mctlawyers.com
Secondary Email (2): melissa@mctlawyers.com